IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE JONES, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 23-06 |
| | : | |
| EASTERN AIR HOLDINGS, INC., et al., | : | |
|     Defendants. | : | |

**MEMORANDUM**

Plaintiff Bruce Jones ("Jones") claims that his former employer failed to make a contractually required severance payment after it fired him. He brings claims for breach of contract and violation of the Pennsylvania Wage Payment and Collection Law ("WPCL") against two defendants: Eastern Airlines, LLC ("Eastern") and Eastern Air Holdings, Inc. ("EA Holdings.") Jones, Eastern and EA Holdings each move for summary judgment.[1]

The Court will deny Jones' motion and Eastern's motion and grant EA Holdings' motion.

I.   **BACKGROUND**[2]

In April, 2021, Jones entered into an employment contract (the "Agreement") with Eastern for the position of Vice President Maintenance and Engineering.[3] Two months later, Jones commenced work at Eastern's headquarters in Wayne, Pennsylvania.[4] He reported directly to the

---

[1] Jones Mot. Summ. J. (hereinafter Jones MSJ), ECF No. 72; Eastern Airlines Mot. Summ. J. (hereinafter Eastern Airlines MSJ), ECF No. 70; EA Holdings Mot. Summ. J. (hereinafter EA Holdings MSJ), ECF No. 71.
[2] On each motion for summary judgment, the Court will view facts and inferences in the light most favorable to the nonmoving party. *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).
[3] Complaint Ex. A (hereinafter Agreement), ECF No. 1-1 at 2. Jones alleges he was hired by Eastern and EA Holdings. Eastern and EA Holdings allege that Jones was hired only by Eastern. Jones' Statement of Undisputed Material Facts (hereinafter Jones SOF), ECF No. 72-2 ¶ 14.; Defendants' Response to Jones SOF, ECF No. 73-1 ¶ 14.
[4] Eastern's Statement of Undisputed and Disputed Facts (hereinafter Eastern SOF), ECF No. 70-3 ¶ 3.

Chief Executive Officer for Eastern Airlines and EA Holdings, Steven Harfst.[5] On December 20, 2021, Harfst terminated Jones' employment.[6]

The Agreement provides that Jones is owed severance pay in the amount of a year's salary if his employment was terminated without cause.[7] The parties dispute whether Jones was terminated for cause and is owed severance pay.

### A. Incident on December 14, 2021

Harfst's decision to terminate Jones was based entirely on an incident that occurred between Jones and Harfst on December 14, 2021 ("the Incident").[8] Eastern alleges that Jones barged into Harfst's office unannounced and yelled profanities towards Harfst.[9] Jones agrees that he communicated his frustrations about a colleague to Harfst,[10] but disputes that he barged into Harfst's office or that he was yelling profanities at him.[11] Rather, Jones contends that the door to Harfst's office was fully opened, he walked through the entrance in a normal manner, and he was at all times restrained. *Id.* ¶ 70-71.

### B. Employment Agreement

The Agreement provides that: "If your [Jones'] employment is terminated by Eastern 'without cause' or by you for 'good reason,' Eastern will pay you an amount equal to the sum of twelve (12) months of salary."[12] The Agreement defines "cause," in pertinent part, as follows:

> "Cause" means: (i) your conviction of, or plea of guilty or no contest to, to a felony; (ii) your willful misconduct in connection with the performance of your duties; (iii) your willful violation of a material provision of Eastern's written policies that the EAH Board determines in good faith is materially detrimental to the best interests

---

[5] Jones SOF, ECF No. 72-2 ¶ 8; Eastern SOF, ECF No. 70-3 ¶ 4.
[6] Jones SOF, ECF No. 72-2 ¶ 19-20.
[7] Agreement at 6.
[8] Jones SOF, ECF No. 72-2 ¶ 21.
[9] Eastern SOF, ECF No. 70-3 ¶ 33-34.
[10] Jones SOF, ECF No. 72-2 ¶ 24.
[11] Jones' Counterstatement to Eastern SOF, ECF No. 75-1 ¶ 34.
[12] Agreement at 6. At the time his employment was terminated, Jones' annual base salary was $200,000. Complaint, ECF No. 1 ¶ 37.

of Eastern and its affiliates; or (iv) your fraud, embezzlement, material misappropriation or material misuse of funds or property belonging to Eastern and its affiliates; provided, however, that any of the events or occurrences described in the immediately preceding clauses, to the extent curable, shall constitute cause only after Eastern has given you written notice of, and 30 days' opportunity to cure, such violation, and then only if such occurrence is not cured. For purposes hereof, no act, or failure to act, on your part will be considered "willful" unless it is done, or omitted to be done, by you in bad faith or without reasonable belief that your action or omission was in the best interests of Eastern and its affiliates. […]

*Id.*

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The materials in the record that parties may rely on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). In opposing

a motion for summary judgment, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In considering this inquiry, "a court does not resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

### III.    ANALYSIS

#### A. Eastern and Jones' Motions for Summary Judgment

Jones claims that he was terminated without cause and Eastern breached the Agreement by not paying him severance. Conversely, Eastern claims that Jones was terminated for cause and there was no breach of the Agreement.

Under Pennsylvania law, three elements are necessary to establish a breach of contract claim: "(1) the existence of a contract, including its essential terms, (2) a breach of the duty imposed by the contract, and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)).

The Pennsylvania WPCL "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Oberneder v. Link Comput. Corp.*, 548 Pa. 201, 696 A.2d 148, 150 (1997). The WPCL "does not create an employee's substantive

right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement." *Hartman v. Baker*, 766 A.2d 347, 352 (Pa. Super. 2000). Accordingly, for a plaintiff to recover under the WPCL, a defendant must breach a contract or agreement to pay wages.

### a. The Incident

The record reflects multiple versions of the events that occurred on December 14, 2021, and led to Jones' termination.[13] Such factual ambiguity must be resolved by a jury at trial. Both parties have shown "sufficient evidence supporting the claimed factual dispute […] to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968).

### b. Termination For Cause

After a jury has determined the facts, the next question is whether Jones was terminated without cause. There are four definitions of "cause" listed in the Agreement:

> (i) your conviction of, or plea of guilty or no contest to, to a felony; (ii) your willful misconduct in connection with the performance of your duties; (iii) your willful violation of a material provision of Eastern's written policies that the EAH Board determines in good faith is materially detrimental to the best interests of Eastern and its affiliates; or (iv) your fraud, embezzlement, material misappropriation or material misuse of funds or property belonging to Eastern and its affiliates[.][14]

Eastern terminated Jones under the second definition: "willful misconduct in connection with the performance of [his] duties."[15] The Agreement defines willful as: an act "done, or omitted to be done, by you in bad faith or without reasonable belief that your action or omission was in the best

---

[13] *Compare* Jones Dep. ECF No. 72-3, 181:8-183:9; 190:9-11; 191:10-24, *with* Harfst Dep., ECF No. 70-9, 39:4-9; 47:24-48:9, *and* Marotta Dep., ECF No. 70-8, 109:22-110:4; 238:11-18, *and* Bucher Dep., ECF No. 73-12, 42:10-22, *and* Kelleher Dep. ECF No. 73-16, 49:10-50:23.
[14] Agreement at 6.
[15] Eastern SOF, ECF No. 70-3 ¶ 44.

interests of Eastern and its affiliates." *Id.* The Agreement also provides:

> any of the events or occurrences described in the immediately preceding clauses, to the extent curable, shall constitute cause only after Eastern has given you written notice of, and 30 days' opportunity to cure, such violation, and then only if such occurrence is not cured.

*Id.*

Summary judgment is only appropriate in a contract interpretation action if the contractual language is unambiguous. *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418 (3d Cir. 2013) (citation omitted). Under Pennsylvania law, if a contract's terms are unambiguous, courts apply the plain meaning rule and assume that the intent of the parties to a written contract is contained in the writing itself. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 613 (3d Cir. 1995) (citing *Samuel Rappaport Family Partnership v. Meridian Bank*, 657 A.2d 17, 21 (Pa. Super. 1995) (internal quotation omitted)). If a text is ambiguous, interpretation is a question for the trier of fact. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (Pa. 1986). Whether a contract is ambiguous is an issue of law for the Court to determine. *Id.* (citations omitted). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* (citations omitted).

The relevant terms of the Agreement are ambiguous. Eastern claims it had cause to terminate Jones because of his "willful misconduct in connection with the performance of [his] duties." Agreement at 6. The Agreement defines "willful" as actions taken in "bad faith" or "without reasonable belief that [the] action […] was in the best interests of Eastern." *Id.* But the Agreement does not indicate what type of conduct will be deemed in "bad faith" or not "in the best interests of Eastern." The Agreement also does not specify the intended scope of Jones' "duties." Eastern was required to provide Jones with notice

and an opportunity to cure his conduct "to the extent [his misconduct was] curable," but "curable" is undefined in the Agreement. *Id.* Whether Eastern breached the Agreement hinges on the meaning of these ambiguous contractual terms.

A jury must decide the meaning of these terms at trial. Extrinsic evidence is admissible to resolve ambiguities in a contract, "irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." *Hutchison*, 519 A.2d at 390 (internal quotation omitted). When resolving a contractual ambiguity, a jury may consider "(1) the parties' intent when they entered into the contract; (2) the contract as a whole, so all parts make sense when read together; (3) the parties' conduct in previous transactions between the parties; (4) the parties' words and conduct after they entered into the contract; and (5) the words' plain and ordinary meaning, unless [the jury finds] that the parties intended the words to have another meaning […]." *Pennsylvania Suggested Standard Civil Jury Instructions* § 19.200 (2024).

A trial is necessary to determine the facts and the meaning of ambiguous contractual terms relevant to Jones' claims. It is inappropriate for the Court to grant summary judgment on Eastern and Jones' motions.

### B. Eastern Air Holdings, Inc.'s Motion for Summary Judgment

EA Holdings moves for summary judgment on the grounds that it is an improper party to this action.[16] EA Holdings is the parent company of Eastern Airlines.

The Agreement is unambiguous that EA Holdings has no duty to pay Jones severance under the Agreement. "The court can grant summary judgment on an issue of contract interpretation if the contractual language is subject to only one reasonable interpretation." *Emerson Radio Corp.*

---

[16] EA Holdings MSJ, ECF No. 71 at 1.

*v. Orion Sales, Inc.*, 253 F.3d 159, 164 (3d Cir. 2001) (citation omitted).

The Agreement provides: "If your [Jones'] employment is terminated by Eastern 'without cause' […] Eastern will pay you an amount equal to the sum of twelve (12) months of salary."[17] The first sentence of the Agreement defines "Eastern" as "Eastern Airlines LLC." Agreement at 1. The Scope of Position section of the Agreement states that Jones must "devote most of [his] working time […] to Eastern and its affiliates/affiliated companies (collectively referred to as 'Eastern')." *Id.*

Under Pennsylvania law, a court should look to the contract as a whole for guidance in interpreting a term in the contract. *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 97 (3d Cir. 2001) (applying Pennsylvania law). Aside from the Scope of Position section, the Agreement uses the term "Eastern" to refer to Eastern Airlines LLC and "Eastern Air Holdings, Inc." or "EAH" to refer to EA Holdings. *Id.* at 5-6. The Agreement also specifies "Eastern and its affiliates" when referring to entities other than Eastern Airlines LLC. *Id.* at 1, 6. For example, the severance clause states that an act is willful if it is not in the "best interests of Eastern and its affiliates." *Id.* at 6. Thus, the Agreement repeatedly distinguishes Eastern from EA Holdings to clarify which entity is being referenced. The contractual provision addressing severance is unambiguous that the duty to pay severance belongs to Eastern.

Because EA Holdings has no duty to pay Jones severance under the Agreement, the Court grants EA Holdings' motion for summary judgment.

---

[17] Agreement at 6.

## IV.  CONCLUSION

The Court will deny Defendant Eastern Airlines, LLC's motion for summary judgment and Plaintiff Bruce Jones' motion for summary judgment. The Court will grant Defendant Eastern Air Holdings, Inc.'s motion for summary judgment. An appropriate order scheduling a trial date follows.

     s/ANITA B. BRODY, J.
ANITA B. BRODY, J.
September 26, 2025